UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHANNON MCGUIRE AND SUSAN MCGUIRE | CIVIL ACTION |
| VERSUS | NO. 25-393 |
| B. BRAUN MEDICAL INC., B. BRAUN INTERVENTIONAL SYSTEMS INC., B. BRAUN MEDICAL | SECTION "R" (1) |

## ORDER AND REASONS

Before the Court is defendants B. Braun Medical Inc. ("BMI") and B. Braun Interventional Systems Inc.'s ("BIS") motion to dismiss for failure to state a claim.[1] Plaintiffs Shannon and Susan McGuire (the "McGuires") oppose the motion.[2] For the following reasons, the Court grants defendants' motion and dismisses plaintiffs' claims without prejudice and with leave to amend.

**I.   BACKGROUND**

Plaintiffs bring this Louisiana products liability case regarding the Bruan VenaTech LP (the "device"), an inferior vena cava ("IVC") filter. The

---

1   R. Doc. 13.
2   R. Doc. 29.

IVC is a vein that returns blood to the heart from the lower extremities.[3] Plaintiffs allege that in certain people, blood clots can travel from blood vessels in the legs and pelvis through the IVC and into the lungs (pulmonary emboli or "PE").[4] Plaintiffs further allege that medical treatments, including implantation of an IVC filter, are available for individuals at risk for PE and deep vein thrombosis (a condition whereby blood clots form in the deep leg veins).[5] Plaintiffs state that IVC filters are designed to trap and filter blood clots before they travel to the heart and lungs.[6]

Plaintiffs allege that in September 2008, Shannon McGuire underwent placement of the device at St. Tammany Parish Hospital.[7] Around November 2016, a catheterization with visualization of Shannon McGuire's IVC displayed it to be unobstructed.[8] Plaintiffs allege that sometime thereafter the device failed "when it titled, penetrated, perforated, and fractured inside" Shannon McGuire, causing him injuries.[9] This alleged failure was discovered in June 2024, when Shannon McGuire underwent a CT scan.[10] Plaintiffs

---

[3]   R. Doc. 1 at ¶ 19.
[4]   *Id.*
[5]   *Id.* at ¶¶ 19, 20.
[6]   *Id.* at ¶ 21.
[7]   R. Doc. 1 at ¶¶ 1; 47.
[8]   *Id.* at ¶ 48.
[9]   *Id.* at ¶¶ 1, 15.
[10]  *Id.* at ¶ 49.

2

allege that the CT scan revealed that the device fractured in a manner such that the tips of it have now perforated Shannon's IVC.[11] Plaintiffs state that this has resulted in extreme pain and suffering, loss of enjoyment of life, disability, other losses, and significant medical expenses.[12] Plaintiffs further allege that Susan McGuire has sustained loss of consortium, loss of services and loss of society.[13]

On February 26, 2025, plaintiffs filed suit in this Court.[14] In their complaint plaintiffs bring two claims, one under the Louisiana Products Liability Act and the other for redhibitory defect.[15]

Defendants BMI and BIS now bring a motion to dismiss plaintiff's claims.[16] Plaintiff opposes the motion and alternatively requests leave to amend.[17] The Court considers the parties' arguments below.

---

[11] *Id.*
[12] *Id.* at ¶ 52.
[13] *Id.* at ¶ 53.
[14] *See generally id.*
[15] *Id.* at ¶¶ 54-72. Plaintiffs have since withdrawn the redhibitory defect claim.
[16] R. Doc. 13.
[17] R. Doc. 29.

3

## II. LEGAL STANDARD

When a defendant attacks the complaint because it fails to state a legally cognizable claim, Rule 12(b)(6) provides the appropriate challenge. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the party's claim is true. *See Iqbal*, 556 U.S. at 678. It need not contain "detailed factual allegations," but it must go beyond "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *See id.* (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant

4

evidence of each element of a claim." *Lormand*, 565 F.3d at 257 (citations omitted). The claim must be dismissed if there are insufficient factual allegations "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *see Jones v. Bock*, 549 U.S. 199, 215 (2007).

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.* "The district court 'may also consider matters of which [it] may take judicial notice.'" *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

## III. DISCUSSION

Defendants aver that plaintiffs have failed to allege legally cognizable injuries and have failed to adequately plead claims under the Louisiana Products Liability Act ("LPLA").

### A. Injury

A plaintiff seeking to recover under the LPLA must show: "(1) that the product was defective and (2) that the defective aspect of the product *caused a legally cognizable injury* to the plaintiff." *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1097 (5th Cir. 1991) (emphasis added). Defendants argue that plaintiffs have not alleged any actual harm that resulted from the device's alleged failure. Plaintiffs aver that their allegation that the device "failed, when it titled, penetrated, perforated and fractured" inside Shannon causing him "to undergo extensive medical care and treatment"[18] constitutes a cognizable injury.

The Court finds that plaintiffs allegations fail to specify a legally cognizable injury that plaintiffs have sustained. Plaintiffs' complaint is devoid of allegations regarding actual, concrete harms stemming from the alleged failure. Plaintiffs do not allege that the device failed to filter blood clots, nor do they allege any specific medical treatment arising out of the

---

18    R. Doc. 1 at ¶ 1.

6

alleged tilting, penetration, perforation, and fracture of the device. They do not allege any specific pain or impairment of bodily function that is attributable to the alleged failure, or even any pain in the area of the device implantation or alleged penetration and perforation site. Plaintiffs do not even allege what prompted the CT-scan that ultimately led to the discovery of the alleged device failure. This information is within plaintiffs' own knowledge or control, and plaintiffs should be able to articulate the nature of any injury, if one exists. As it stands, plaintiffs have failed to plead an actual injury.

## B. LPLA

In Louisiana, the LPLA provides the exclusive theories of liability of a manufacturer for damages caused by its product. La. R.S. § 9:2800.52. A plaintiff may not recover from a manufacturer in tort under any theory of liability that is not set forth in the LPLA. *Id.*; *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 261-62 (5th Cir. 2002). The statute provides that a manufacturer "shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonable dangerous when such damage arose from a reasonably anticipated use of the

7

product by the claimant or another person or entity." La. R.S. § 9:2800.54(A).

The LPLA provides four ways a product can be unreasonably dangerous: (1) in construction or composition, La. R.S. § 9:2800.55, (2) in design, La. R.S. § 9:2800.56, (3) because of inadequate warning, La. R.S. § 9:2800.57, or (4) because of nonconformity to an express warranty, La. R.S. § 9:2800.58.

Claimants under the LPLA need not plead each allegation in extreme detail. *Flagg v. Stryker Corp.*, 647 F. App'x 314, 317 (5th Cir. 2016); *see also Fuller v. Eisai Inc.*, 513 F.Supp. 3d 710, 718 (E.D. La. Jan. 15, 2021) (Africk, J.) ("[A]t least in the context of pharmaceutical design-defect claims, courts do not require that plaintiffs plead extremely detailed factual allegations to survive a motion to dismiss." (cleaned up)). Nevertheless, plaintiff must still allege "sufficient information to 'raise a reasonable expectation that

discovery will reveal evidence' to support . . . liability." *Id.* (citing *In re S. Scrap Material Co.*, 541 F. 3d 584, 587 (5th Cir. 2008)).

Plaintiffs' complaint asserts claims under all four of the aforementioned theories. The Court considers whether plaintiffs' allegations satisfy each in turn.

*1. Construction or Composition*

To establish a claim for defective construction or composition under the LPLA, plaintiffs must establish that, "at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. R. S. § 9:2800.55. Here, plaintiffs allege that the device is "unreasonably dangerous in construction and composition[,]"[19] but their complaint is devoid of any factual allegations as to *how* the device is defectively constructed or composed. Plaintiffs' argument is circular. Plaintiffs argue that the device must be defective, otherwise it would not have failed by

---

[19] R. Doc. 1 at ¶ 58.

9

tilting, migrating, and fracturing. Moreover, plaintiffs do not allege how the unidentified defect caused plaintiffs' alleged injuries.

Defective construction or composition claims require more than conclusory allegations. Courts in this circuit have repeatedly held that such claims cannot survive a motion to dismiss without at least allegations of how the product is defective and how that defect caused the injuries alleged. *See Lussan v. Merck Sharp & Dohme Corp.*, 2017 WL 2377504, at *2 (E.D. La. June 1, 2017) (Vance, J.) (collecting cases). Plaintiffs' conclusory allegations are insufficient, and the Court must dismiss their claims for defective construction or composition.

### 2. In Design

"A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control: (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design." La. R. S. § 9:2800.56. The LPLA "does not allow a fact finder to presume an unreasonably dangerous design solely from the fact that injury occurred." *Watson v. Bayer Healthcare Pharms., Inc.*, 2013 WL 1558328, at *4 (E.D. La. Apr. 11, 2013)

10

(Feldman, J.) (quoting *McCarthy v. Danek Med., Inc.*, 65 F. Supp. 2d 410, 412 (E.D. La. 1999) (Lemelle, J.)). Instead, to state a claim for unreasonably dangerous design, plaintiffs must: "(1) allege how the design is defective or how the design relates to the injury[;] and (2) demonstrate the existence of a specific alternate design." *Robertson v. AstraZeneca Pharm., LP*, 2015 WL 5823326, at *4 (E.D. La. Oct. 6, 2015) (Barbier, J.) (cleaned up).

Plaintiffs have sufficiently alleged the existence of an alternative design. Specifically, the complaint alleges that defendants "designed, manufactured and sold outside the United States" a similar device with additional design elements.[20] Plaintiffs further allege that the "design elements" in the non-U.S. device included "safety features" that were not incorporated in the U.S. device. However, plaintiffs fail to identify any specific "safety feature" that was missing from the U.S. device, the inclusion of which would have reduced the alleged risks of the U.S. device.

Further, plaintiffs make no specific allegation as to *how* the device failed. Plaintiffs allege that the device "fail[ed] to withstand the normal anatomical and physiological loading cycles exerted *in vivo*."[21] Outside of

---

20    R. Doc. 1 at ¶ 33.
21    *Id.* at ¶ 26. *See also id.* at ¶ 30 ("The failure of the [device] is attributable in part to the fact that [d]efendants' permanent IVC filters, including this [device] suffer from a design defect causing the filters to

11

the bare allegation that the device lacks unspecified "safety features," plaintiffs do not tie the alleged failure to any part of the device's design. The complaint describes the device as "a conical shaped filter made of Phynox (a.k.a., Elgoy) wires, a cobalt-chromium-nickel alloy . . . [and] has side hooks that enable the filter to fix into place."[22] Plaintiffs do not allege that a different alloy, a different shape, a different clasping mechanism, or any combination thereof would have performed better. Thus, the complaint is devoid of "an allegation of precisely how the product failed." *Flagg*, 647 F. App'x at 318. The Court must dismiss plaintiffs' design defect claim.

### 3. Inadequate Warning

The Court first addresses a preliminary issue regarding the information presented on this claim. In their opposition, plaintiffs attach two exhibits as additional support. Plaintiffs argue that the Court may review this attachment as they argue that they are central to plaintiffs' claims and referenced by the complaint. On a 12(b)(6) motion, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (US), LP v. Barclays*

---

      be unable to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.").

[22]    *Id.* at ¶ 24.

12

*Bank PLC*, 594 F. 3d 383, 387 (5th Cir. 2010); *see also Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F. 3d 1276, 1284 (11th Cir. 2007) (Recognizing an exception to the face of the complaint limitation "in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss."). Further, while "'[b]riefing may clarify unclear allegations in a complaint,' . . . 'it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss.'" *Cont'l Auto Sys., Inc. v. Avanci, L.L.C.*, 27 F. 4th 326, 333 n.9 (first quoting *Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000); then quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 586 (S.D. Tex. 2011) (Harmon, J.)). Plaintiffs, not defendants, have added the attachments. In opposition, plaintiffs are not simply "clarify[ing] unclear allegations" but are attempting to amend them. *Id.* Plaintiffs are not authorized to do this. Accordingly, the Court will not consider the attachments nor references to them in plaintiffs' opposition.

    A failure-to-warn claim under the LPLA requires a plaintiff to "demonstrate that the product in question has a potentially damage-causing characteristic[,] and that the manufacturer failed to use reasonable care to

13

provide an adequate warning about this characteristic." *Stahl*, 283 F.3d at 264 (cleaned up).

Louisiana applies the "learned intermediary doctrine" to inadequate warning claims regarding pharmaceutical products. *Stahl*, 283 F.3d at 265. Under this doctrine, "the manufacturer's duty to warn is owed to the physician, not the patient" in cases involving medical devices. *Grenier v. Med. Eng'g Corp.*, 243 F.3d 200, 205 n.4 (5th Cir. 2001).

The elements of an inadequate warning claim require plaintiffs to demonstrate: "(1) that the defendant failed to warn the physician of a risk associated with the use of the product, not otherwise known to the physician, and (2) that the failure to warn the physician was both a cause in fact and the proximate cause of plaintiff's injury." *Willett*, 929 F.2d at 1098. Causation requires plaintiffs to show that "a proper warning would have changed the decision of the treating physician, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product." *Id.* at 1099; *see also Flagg*, 647 F. App'x at 316 n.3.

Plaintiffs fail to allege sufficient facts to give rise to an inadequate warning claim under the LPLA. Plaintiffs allege that defendants "failed to disclose to physicians, patients, or [p]laintiff[s] that its permanent IVC filters, including the [device], were subject to breakage, collapse, migration,

14

fracture, causing thrombus and/or the appropriate degree of risk of damage to the vena cava wall."[23] Plaintiffs do not allege that Mr. McGuire's doctor would not have implanted defendants' device in Mr. McGuire had the doctor received an adequate warning. Plaintiffs have thus failed to allege causation and for this reason, plaintiffs' inadequate warning claim must be dismissed. *See Lussan*, 2017 WL 2377504, at *3 (dismissing inadequate warning claim in part because plaintiff failed to allege that her doctor would not have used or prescribed the product if adequately warned); *Huffman v. Squibb*, 2016 WL 6024532, at *2 (E.D. La. Oct. 14, 2016) (Africk, J.) (dismissing inadequate warning claim under LPLA because plaintiff did not allege that adequate warning would have changed the decision of treating physician); *see also Flagg*, 647 F.App'x at 316 (affirming district court's dismissal of an inadequate warning claim under the LPLA at the motion to dismiss stage because the plaintiff "failed to include any allegations about whether [defendants] failed to warn [his] doctor of the risk involved and whether [his] doctor would have used the [product] if given such a warning.").

   *4. Nonconformity to an express warranty*

To establish a breach of express warranty claim, a plaintiff must show that (1) there was an express warranty made by the manufacturer about the

---

[23]    R. Doc. 1 at ¶ 27.

15

product; (2) the express warranty induced the plaintiff to use the product; and (3) the plaintiff's damage was proximately caused because the express warranty was untrue. La. R. S. § 9:2800.58; *see also Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 452 (5th Cir. 2002).

The LPLA defines "express warranty" as "a representation, statement of alleged fact or promise about a product . . . that represents, affirms or promises that the product . . . possesses specified characteristics or qualities or will meet a specified level of performance." La. R. S. § 9:2800.53(6). General opinions or general praise of a product are not express warranties under the LPLA. *Id.*

Here, plaintiffs allege that defendants "marketed and sold" the device as a "permanent filter."[24] Plaintiffs add that the device "failed to conform to the representations contained in the express labeling and marketing materials,"[25] and had they "known that the [device] was faulty, they would not have purchased [it]."[26] These allegations are insufficient. Plaintiffs' complaint lacks information regarding the actual content of the alleged

---

[24] R. Doc. 1 at ¶ 23.
[25] *Id.* at ¶ 36.
[26] *Id.* at ¶ 67. Notably, the only allegations that plaintiffs' would not have "purchased" the device if they knew it was faulty are contained in their redhibitory defect claim, which is not incorporated by reference into their LPLA claims. Plaintiffs have since withdrawn their redhibitory defect claim.

16

warranty that induced their use or their physician's use of the device. Plaintiffs do not offer any information on what is contained in the labeling and marketing materials. And, stating that they would not have purchased a device had they known it was "faulty" is insufficient to satisfy the requirement that they specifically identify how a specific warranty induced Shannon McGuire to undergo implantation of the device or that any such warranty induced his doctor to choose the device for implantation. Plaintiffs' complaint therefore is facially insufficient. *See Lussan*, 2017 WL 2377504, at *3 (dismissing an express warranty claim because plaintiff failed to specify the warranty in question, explain why it was untrue, and allege that any representation induced her to use the product or her doctor to prescribe it); *Henderson v. Dasa,* 2014 WL 1365968, at *3 (E.D. La. Apr. 7, 2014) (Milazzo, J.) (dismissing an express warranty claim because the complaint was "devoid of any allegations regarding the content of the alleged warranty, much less an explanation of how the warranty was untrue); *Flournoy v. Johnson & Johnson*, 2016 WL 6474142, at *3 (E.D. La. Nov. 2, 2016) (Lemelle, J.) (dismissing an express warranty claim because plaintiff failed to identify the contents of any warranty or explain how the warranty induced plaintiff to use the product).

### C. Redhibitory Defect

17

Plaintiffs have conceded that their claim for redhibitory defect is prescribed and have withdrawn the claim. Accordingly, the Court dismisses with prejudice plaintiffs' claim for redhibitory defect.

### D. Leave to Amend

District courts must dismiss with leave to amend "unless the defect is simply incurable, or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Young v. U.S. Postal Serv. ex rel. Donahoe*, 620 F. App'x 241, 245 (5th Cir. 2015) (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000)). The presumption is that courts should dismiss a complaint only after "affording every opportunity" to the plaintiff to state a claim unless it would be futile. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curium); *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003). An amendment is futile if "it would fail to survive a Rule 12(b)(6) motion." *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).

This is plaintiffs' first complaint, and the defects in it may be curable. *See Young*, 620 F. App'x at 245. Under the presumption that leave to amend "should be freely granted," the Court grants plaintiffs' motion to amend. *Marucci Sports*, LLC, 751 F.3d at 378.

## IV. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss. The Court DISMISSES plaintiffs' claim under the LPLA WITHOUT PREJUDICE and with LEAVE TO AMEND the complaint within fourteen days of this order. The Court DISMISSES plaintiffs' claim for redhibitory defect WITH PREJUDICE.

New Orleans, Louisiana, this 19th day of September, 2025.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE